996 F.2d 812
 Frances BROWN, Widow of Thomas Brown, Petitioner,
v.
ROCK CREEK MINING COMPANY, INC. and Director, Office of
Workers' Compensation Programs, United States
Department of Labor,*
Respondents.
 No. 92-3496.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 4, 1993.
Decided June 14, 1993.
 
 Dorothy B. Stulberg (argued and briefed), Mostoller & Stulberg, Oak Ridge, TN, for petitioner.
 Marcel Smith (argued and briefed), Kincaid, Wilson, Schaeffer, Hembree, Van Inwegen & Kinser, Lexington, KY, Karen Blank (briefed), Helen Cox (argued), U.S. Dept. of Labor, Office of the Sol., Washington, DC, for respondents.
 
 
 1
 Before KEITH and BATCHELDER, Circuit Judges; and TAYLOR, District Judge.**
 
 
 2
 ANNA DIGGS TAYLOR, District Judge.
 
 
 3
 Petitioner Frances Brown seeks review of a decision of the Benefits Review Board ("BRB"), United States Department of Labor, which affirmed the decision of the Administrative Law Judge denying her widow's black lung benefits. Both Petitioner and the Respondent Director, Office of Workers' Compensation Program, United States Department of Labor ("Director"), argue that the Administrative Law Judge ("ALJ") and the BRB erroneously interpreted the Black Lung Benefits Act, 30 U.S.C. §§ 901-945 (1986), and 20 C.F.R. § 718.205(c)(2) (1992), the implementing regulation, and urge this Court to adopt the less stringent standard which has been adopted by the Third, Fourth, and Seventh Circuit Courts of Appeals. We agree with Petitioner and Respondent Director, reverse the BRB, and remand the case directing the award of widow's benefits to Petitioner.
 
 I.
 
 4
 Thomas Brown was a coal miner for the seventeen years ending in June, 1984. The Director has identified Respondent Rock Creek Mining Company, Inc. ("Rock") as the responsible operator, and that identification was not contested below. Mr. Brown filed a claim for benefits under the Black Lung Benefits Act on January 14, 1985; and while his claim was still pending, Mr. Brown died on June 7, 1989. Mr. Brown's widow, Frances Brown, the claimant here, filed her claim for widow's benefits on July 26, 1989. The ALJ issued a Decision and Order awarding benefits on the living miner's claim but denying benefits on the widow's claim. The ALJ found that, although Mr. Brown was totally disabled by pneumoconiosis, his death was not "due to or significantly caused by pneumoconiosis" and therefore ruled that Mrs. Brown was not entitled to widow's benefits under 20 C.F.R. § 718.205(c) (1992).[1]
 
 
 5
 Mrs. Brown appealed the ALJ's determination to the BRB, which on April 30, 1992 affirmed the denial of benefits to the widow. Mrs. Brown appeals the denial of widow's benefits, and Respondent Rock does not contest the grant of benefits on the living miner's claim.
 
 II.
 
 6
 Although the immediate cause of Mr. Brown's death was acute ventricular fibrillation, his treating physician, Dr. Curtis C. Sexton, listed pneumoconiosis as another significant condition contributing to his death, on the death certificate. Dr. Sexton, Mr. Brown's personal physician who had observed him for years, before and at the time of his death, later wrote to the BRB that in his "professional opinion, Mr. Brown expired after becoming hypoxic, secondary to his well-established lung-disease, developed ventricular extopy and subsequently ventricular fibrillation, because he already had a compromised coronary vascular system as well." He also concluded that there was "overwhelming objective evidence of both emphysema and coal worker's pneumoconiosis by history, by previous established pulmonary consultation clinically and, subsequently, by post-mortem examination."
 
 
 7
 Dr. James H. O'Hara conducted the autopsy and rendered a "Final Anatomic Diagnosis" which included, in part, a finding that Mr. Brown died of "chronic, focally nodular anthracosilicotic pulmonary disease with associated emphysema histologically consistent with coal miners' pneumoconiosis." He also diagnosed atherosclerosis, chronic cholecystitis with cholelithiasis, and diverticulosis, sigmoid colon.
 
 
 8
 The treating lung specialist, Dr. Richard E. Parrish, reviewed Mr. Brown's records and determined that he "undoubtedly had significant obstructive lung disease and hypoxemia" and that his chronically low oxygen level could have contributed significantly to his heart condition.
 
 
 9
 Respondent Director thereafter asked Dr. Richard L. Naeye to review autopsy slides. The doctor apparently was under the impression from the records that the miner had recently undergone surgery, as he related the death to complications from "recent surgery" and to advanced arteriosclerotic coronary disease, in his report. Mr. Brown, however, had not undergone surgery since 1985, four years before his death. Dr. Naeye also diagnosed moderately severe pneumoconiosis, but concluded that "[i]t is most unlikely that pneumoconiosis played a role in this man's death."
 
 
 10
 The ALJ accorded decisive weight to Dr. Naeye and denied widow's benefits because, although the death certificate gave pneumoconiosis as a "significant other condition," it was not listed as a specific cause of Mr. Brown's death. The ALJ therefore determined that the miner's death was not due to or significantly caused by pneumoconiosis.
 
 III.
 
 11
 This case turns upon the proper interpretation of 20 C.F.R. § 718.205(c)(2) (1992). Petitioner and Respondent Director urge this Court to adopt the Director's interpretation that pneumoconiosis is a "substantially contributing cause" of death if the pneumoconiosis, even if not a proximate cause of death, had a tangible effect on a miner's death. This position has been adopted by three other circuits.
 
 
 12
 Lukosevicz v. Director, OWCP, 888 F.2d 1001 (3d Cir.1989) is the leading case on interpretation of this regulation, and factually similar. There, the evidence was that the miner's pneumoconiosis had shortened his life, although pancreatic cancer unrelated to his pneumoconiosis was the primary cause of death. The Court traced the history of the 1981 Black Lung Benefits Amendments, as well as the regulatory history of 20 C.F.R. § 718.205 (1983), and concluded that the Director's interpretation was neither plainly erroneous nor inconsistent with the regulatory history of the regulation. It remanded the case to the BRB for payment of benefits because the disease was a substantially contributing cause of the miner's death.
 
 
 13
 The Fourth Circuit also adopted the Director's present position on this issue in Shuff v. Cedar Coal Co., 967 F.2d 977 (4th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993). "[P]neumoconiosis substantially contributes to death if it serves to hasten death in any way." Id. at 979 (quoting the brief of the Director). The Shuff Court noted that the Director's interpretation of the regulations is entitled to substantial deference from the Court. Pauley v. BethEnergy Mines, Inc., --- U.S. ----, ----, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991).
 
 
 14
 The Seventh Circuit also deferred to the Director's interpretation of "his own concededly valid regulation" in Peabody Coal Co. v. Director, OWCP, 972 F.2d 178, 183 (7th Cir.1992) (citing Lukosevicz, 888 F.2d at 1005). That Court found that the Director's interpretation provided a workable standard for evaluating whether a miner's death was considered due to pneumoconiosis and noted that "the Director's interpretation ... is controlling 'unless it is plainly erroneous or inconsistent with the regulation.' " Peabody Coal Co. v. Blankenship, 773 F.2d 173, 175 (7th Cir.1985), citing Udall v. Tallman, 380 U.S. 1, 16-17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945).
 
 
 15
 Respondent Rock does not address Petitioner's (or Respondent Director's) request that this Court adopt the interpretation of "substantially contributing cause or factor" which has already been adopted by the Third, Fourth, and Seventh Circuits. Rather, Respondent Rock contends that the ALJ's findings of fact and conclusions of law were rational and supported by substantial evidence as he was within his discretion in according great weight to the opinion of Dr. Naeye, which provided the necessary substantial evidence to support the decision.
 
 
 16
 The ALJ, however, had required that Mrs. Brown demonstrate that her husband's death was "significantly caused by" this disease. That standard is not in accord with either the statutory or regulatory language governing the award of black lung benefits. The regulatory language which does govern is that the disease must have been a "substantially contributing cause" of death. However, that term is not defined in either the Act or the regulations, nor has it been interpreted by this Circuit, to date.
 
 
 17
 An examination of the legislative history reveals that Senator Orrin Hatch and Representative Carl Perkins, chairs of the committees responsible for the 1981 amendments to this statute, stressed during debate that there was no intention, in adopting this language, "to deny survivor's benefits when complications of pneumoconiosis have caused a miner's death or where pneumoconiosis was a substantially contributing factor to that death." 127 Cong.Rec. 31,747, 31,978 (1981).
 
 
 18
 The Department of Labor thereafter accorded those statements by the Bill's sponsors particular deference in drafting the regulation. Comment (j), 48 Fed.Reg. 24,276 (1983). The Secretary consequently interpreted the Hatch-Perkins statement to indicate that "pneumoconiosis need not be the 'principal', sole, primary or proximate cause of the miner's death in order for the survivor's claim to be compensable." Reply to comment (n), 48 Fed.Reg. 24,277 (1983).
 
 
 19
 This Court has previously afforded due deference to the Director's position in cases raising similar questions of regulatory interpretation. See Wolf Creek Collieries v. Robinson, 872 F.2d 1264, 1268 (6th Cir.1989); Saginaw Mining Co. v. Mazzulli, 818 F.2d 1278, 1283 (6th Cir.1987). Judicial deference is proper and "legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Peoples Federal Sav. & Loan Ass'n of Sidney v. C.I.R., 948 F.2d 289, 300 (6th Cir.1991).
 
 
 20
 In this case, it appears that the ALJ's decision was based upon an incorrect and overly stringent interpretation of 20 C.F.R. § 718.205(c)(2) (1992). The statutory language, the administrative purpose in adopting the regulation, and the well-reasoned interpretations of our sister circuits as first articulated in Lukosevicz and subsequently adopted in Shuff and Peabody Coal Co., are persuasive that the appropriate standard to be adopted by this circuit is that this disease will be found to be a "substantially contributing cause or factor" of a miner's death in a case in which it has actually hastened his death. As the Court in Lukosevicz held, the regulatory language "substantially contributing cause" encompasses the situation where pneumoconiosis actually hastens a miner's death. 888 F.2d at 1006.
 
 
 21
 In light of this conclusion, we find that we must remand the case for payment of benefits. An administrative law judge is statutorily obliged "to consider all of the evidence and make findings of fact and conclusions of law which adequately set forth the factual and legal basis for his decision." Director, OWCP v. Rowe, 710 F.2d 251, 254-55 (6th Cir.1983).[2] (Emphasis supplied). (Citations omitted).
 
 
 22
 The ALJ in the present case erred in that he not only applied an improper standard, but also failed to consider all of the evidence of record. Both the death certificate and the autopsy report noted pneumoconiosis as a condition significantly contributing to Brown's death, supporting Petitioner's claim, as did the lung specialist, Dr. Parrish. "It is clearly established that the opinions of treating physicians are entitled to greater weight than those of non-treating physicians." Tussey v. Island Creek Coal Co., 982 F.2d 1036, 1042 (6th Cir.1993). (Citations omitted). The opinion of Dr. Sexton, the treating physician, was also entitled to greater weight than that of the consultant who examined only slides from the autopsy, and who labored under the misapprehension that surgery had been recently performed in concluding it most unlikely that the disease had played a role in Brown's death.
 
 
 23
 Respondent Director argues here that the case should be remanded for a new hearing by an ALJ instructed to apply the standard adopted today.
 
 
 24
 It appears to this Court to be abundantly clear, however, that there was not substantial evidence on the whole record to support a denial of benefits in this case under the appropriate standard, and that the overwhelming evidence was that pneumoconiosis hastened the miner's death. "Substantial evidence is 'more than a mere scintilla;' substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Warman v. Pittsburg & Midway Coal Mining Co., 839 F.2d 257, 261 n. 3 (6th Cir.1988), quoting Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 488 (6th Cir.1985), quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).
 
 
 25
 Mrs. Brown's claim has been in litigation since 1989, and further proceedings, which would involve a rehearing of the evidence already before us, are not necessary. We hold that pneumoconiosis is a substantially contributing cause or factor leading to a miner's death if it serves to hasten that death in any way, and that Petitioner has met that standard by overwhelming evidence.
 
 
 26
 Accordingly, the Board's decision is REVERSED and this case REMANDED for payment of benefits.
 
 
 27
 ALICE M. BATCHELDER, Circuit Judge, dissenting.
 
 
 28
 I disagree with the majority's view that it is necessary in this case to offer an interpretation of "substantially contributing cause," I disagree with the interpretation of that term that the majority adopts, and I disagree that this case should be remanded with an order directing the payment of benefits. I therefore respectfully dissent.
 
 
 29
 A. Interpretation of "substantially contributing cause" is not warranted
 
 
 30
 I first take issue with the majority's conclusion that this case requires us to interpret "substantially contributing cause." I agree with the majority when it writes,
 
 
 31
 The ALJ ... had required that Mrs. Brown demonstrate that her husband's death was "significantly caused by" this disease. That standard is not in accord with either the statutory or regulatory language governing the award of black lung benefits. The regulatory language which does govern is that the disease must have been a "substantially contributing cause" of death.
 
 
 32
 I completely agree that the ALJ applied the wrong standard, or if he knew the correct one, he did not explain his finding enough for us to discern that fact.[1] I am at a loss, however, as to why we must interpret the correct standard, when the ALJ applied the wrong standard altogether.
 
 
 33
 The ALJ's error in this case is virtually identical to the ALJ's error in another case that came before this Court. In Griffith v. Director, OWCP, No. 90-3160, 1990 WL 164635, 1990 U.S.App. LEXIS 19224 (6th Cir. Oct. 29, 1990) (unpublished), the ALJ denied Griffith, a widow, survivor's benefits. The ALJ ruled that the medical evidence was conflicting as to whether the decedent had pneumoconiosis, so the ALJ ruled that Griffith failed to prove by a preponderance of the evidence that her husband died of pneumoconiosis. In his written opinion, the ALJ noted, "Even if I were to find that the Miner had some degree of pneumoconiosis, there is still no evidence in the record to establish that the cause of the Miner's death was significantly related to or significantly aggravated by pneumoconiosis." Id., 1990 WL 164635 at * 2, 1990 U.S.App. LEXIS 19224 at * 4.
 
 
 34
 On appeal, Griffith argued before this Court that the ALJ applied an erroneous legal standard to determine whether her husband's death was due to pneumoconiosis. A panel of this Court held that the standard the ALJ had applied, "significantly related to or significantly aggravated by pneumoconiosis," was the wrong standard; the correct standard was the "substantially contributing cause" standard.[2] Id., 1990 WL 164635 at * 2, 1990 U.S.App. LEXIS at * 5. The Director conceded that the ALJ applied the wrong standard, but asked the court to include with any remand interpretive instructions on what qualifies as a "substantially contributing cause." Id., 1990 WL 164635 at * 2, 1990 U.S.App. LEXIS at * 6. This Court denied the request, saying that interpretive statements would be premature without first having the ALJ apply the correct standard. Id. The Court therefore remanded for consideration under the correct standard.
 
 
 35
 I agree with the approach taken by the Griffith court. Only when an ALJ specifically applies the "substantially contributing cause" standard can we then proceed to consider whether the ALJ's interpretation of "substantially contributing cause" is a correct one. Therefore, I would have left the interpretation of "substantially contributing cause" for another day.[3]
 
 
 36
 B. The majority erred in adopting the Director's recommended interpretation
 
 
 37
 Even if I did agree that the meaning of "substantially contributing cause" was ripe for adjudication, I would not adopt the standard issued today. In its analysis, the majority, citing Pauley v. BethEnergy Mines, Inc., --- U.S. ----, ----, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991), writes that "the Director's interpretation of the regulations is entitled to substantial deference from the Court." What is missing from this statement is the conditional that goes with it: If the provisions are ambiguous, the Director's interpretation is entitled to deference. See id. ("Judicial deference to an agency's interpretation of ambiguous provisions of the statutes it is authorized to implement reflects a sensitivity to the proper roles of the political and judicial branches." (citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984))). It is difficult for me to say that "substantially contributing cause" is ambiguous and that we need the Director to interpret it for the ALJs or for us. If there is any doubt as to the meaning of these commonly used words, an ALJ can consult any dictionary for guidance, and after that it is our job simply to see if the conclusion drawn by the ALJ is supported by substantial evidence.[4]
 
 
 38
 Where the language of the regulation is clear and plain, not only is there no reason to let the Director offer an interpretation of it and no reason to consult the legislative history, but there is every reason not to do so. First and foremost, of course, Chevron instructs that unless the statute's provisions are ambiguous, we are simply to give effect to the unambiguously expressed intent of Congress. 467 U.S. at 842-43, 104 S.Ct. at 2781-82. The reason for this requirement is obvious: through excursions into legislative history, a writer can find support for virtually any position. Here, for example, the majority cites the chairs of the House and Senate committees responsible for the new "substantially contributing cause" language as indicating during debate that they did not intend "to deny survivor's benefits when complications of pneumoconiosis have caused a miner's death or where pneumoconiosis was a substantially contributing factor to death." This, however, cannot possibly support a reading that benefits should be awarded if pneumoconiosis serves to "hasten death in any way." And, within the very same portion of the Congressional Record, we find that several changes to the Act were being made because benefits were being awarded in far too many cases: "Many have contended that the current criteria are simply too loose and that thousands of claimants who are not truly disabled have received benefits." 127 Cong.Rec. 31,977 (1981). Even Lukosevicz v. Director, OWCP, 888 F.2d 1001 (3d Cir.1989), which adopted the Director's recommended interpretation, acknowledged that the new standard was "intended to tighten the causal relationship necessary to obtain benefits." Id. at 1005.
 
 
 39
 While I do not think that the legislative history should have been consulted in the first place, I find it particularly disturbing when language that does not even support the author's position is taken out of context and conscripted to serve the author's purposes.
 
 
 40
 C. This case should be remanded for further consideration
 
 
 41
 I also disagree with the majority's conclusion that this case must be remanded for payment of benefits, rather than for further consideration in light of the standard adopted. This court is in a very poor position to weigh evidence, and for that reason it is only the exceptional case in which we remand with an order to award benefits. While I think it probable that Mrs. Brown is entitled to benefits under the new standard announced today, I disagree that the conclusion is so "abundantly clear" as to require us to order that benefits be awarded. If I had been with the majority up to this point in the analysis, I would simply have remanded for further consideration.[5]
 
 
 42
 For the foregoing reasons, I dissent.
 
 
 
 *
 ("OWCP")
 
 
 **
 The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 According to 20 C.F.R. § 718.205(a) (1992), "Benefits are provided to eligible survivors of a miner whose death was due to pneumoconiosis." Under 20 C.F.R. 718.205(c)(2) (1992), for claims filed on or after January 1, 1982, "death will be considered due to pneumoconiosis if ... pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or where the death was caused by complications of pneumoconiosis...." Mrs. Brown's claim was filed after January 1, 1982 and therefore must be evaluated under the later standard
 
 
 [2]
 See 5 U.S.C. § 557(c)(3)(A) (1977) (The Administrative Procedure Act requires that an administrative law judge's decision be accompanied by "findings and conclusions, and the reasons or basis therefor, on all material issues of fact, law or discretion presented on the record.") (Emphasis added.); see also 20 C.F.R. § 725.477(b) (1992); Director, OWCP v. Congleton, 743 F.2d 428, 429 (6th Cir.1984)
 
 
 [1]
 After reviewing the evidence and finding that Mr. Brown's estate was entitled to benefits, the ALJ considered Mrs. Brown's claim:
 With respect to the widow's claim, Dr. Naeye found it most unlikely that pneumoconiosis played a role in his death. The death certificate gave pneumoconiosis as a significant other condition, but did not list it as a causal factor in Mr. Brown's death. I find that the widow's case does not have merit, since Claimant's death was not due to or significantly caused by pneumoconiosis.
 This was the ALJ's entire discussion of Mrs. Brown's claim, and it is wholly inadequate. As the majority notes, the ALJ must "make findings of fact and conclusions of law which adequately set forth the factual and legal basis for his decision."
 
 
 [2]
 What the ALJ had done was to apply the old (pre-1982) standard, instead of the "substantially contributing cause" standard that went into effect January 1, 1982
 
 
 [3]
 I note that each of the other circuits that have ruled on the interpretation of "substantially contributing cause" was presented with a case in which the ALJ had used the correct "substantially contributing cause" standard. See Lukosevicz v. Director, OWCP, 888 F.2d 1001 (3d Cir.1989); Shuff v. Cedar Coal Co., 967 F.2d 977 (4th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993); Peabody Coal Co. v. Director, OWCP, 972 F.2d 178 (7th Cir.1992)
 
 
 [4]
 The Director contends that the suggested interpretation is consistent with the dictionary definitions of "substantially," "contributing," and "cause." See Director's Br. at 13 n. 10. The Director also presented this argument to the court in Shuff, 967 F.2d at 980. The Shuff court did not address whether this interpretation was in line with the dictionary meaning, because it deferred to the Director's interpretation, finding that "substantially contributing cause" was "not defined anywhere in the regulations." Id. I disagree with the conclusion that because "substantially contributing cause" is not defined in the regulations, it is thus ambiguous and requires us to defer to the Director's interpretation. Furthermore, I sincerely doubt that the plain meaning of "substantially contributing cause" is equivalent to "having a tangible effect, however minimal" or "hastening death in any way," as the Director argues
 
 
 [5]
 Part of the difficulty I have with the majority's position flows from what I perceive to be errors in reading the evidence
 First, once at the beginning and once at the end of section II, the majority correctly states that Dr. Sexton listed pneumoconiosis on the death certificate under "other significant conditions contributing to death." Then, later in the opinion, the majority writes that the death certificate "noted pneumoconiosis as a condition significantly contributing to Brown's death" (emphasis added). I note that "significant condition contributing to death" is very different from "condition significantly contributing to death." This is an important distinction because when considered in the context of the other causes listed on the death certificate, pneumoconiosis probably was not a significantly contributing cause of death. The "cause of death" section on the death certificate reads in full (printed matter in ordinary type; doctor's writing in italics):
 Part I
 IMMEDIATE CAUSE (Final disease or condition resulting in death)
 a. Ventricular Fibrillation, Acute
 Interval between onset and death: immediate
 Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (disease or injury that initiated events resulting in death) LAST
 b. Ischemic Heart Disease
 Interval between onset and death: minutes
 c. Triple Vessal Obstructive, C.A.D.
 Interval between onset and death: years
 d. Coronary Atherosclerosis
 Interval between onset and death: years
 Part II
 Other significant conditions contributing to death but not resulting in the underlying cause given in Part I.
 Pneumoconiosis, COPD, [illegible]
 Surgery for abdominal aneurysm
 (emphasis in original.) When taken as a whole, the death certificate shows only that pneumoconiosis was a significant condition, not that it was a significant cause. This, of course, does not necessarily mean that pneumoconiosis was not a "substantially contributing cause" under the majority's new interpretation, but it does cut against the majority's characterization of the evidence as "overwhelming."
 Second, in concluding that the ALJ "failed to consider all the evidence of record," the majority writes, "Both the death certificate and the autopsy report noted pneumoconiosis as a condition significantly contributing to Brown's death ..." (emphasis added). When I read the autopsy report, I do not find such a conclusion. In fact, the autopsy report offers no conclusions about the cause of death; it only identifies conditions existing at the time of death. It is the death certificate that, in this case, offers any conclusions regarding the cause of death. Again, I do not imply that this means that the evidence would not support the award of benefits; my concern is that the evidence is not misrepresented.