48 F.3d 1217
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Alpha PETTIT, widow of Glen Pettit, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United
States Department of Labor, Respondent.
 No. 94-1927.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 31, 1995.
Decided Feb. 23, 1995.
 
 ARGUED: Martin Douglas Wegbreit, Client Centered Legal Services of Southwest Virginia, Inc., Castlewood, VA, for petitioner. Jeffrey Steven Goldberg, United States Department of Labor, Washington, DC, for respondent. ON BRIEF: Thomas S. Williamson, Jr., Solicitor of Labor, Donald S. Shire, Associate Solicitor, Christian P. Barber, Counsel for Appellate Litigation, United States Department of Labor, Washington, DC, for respondent.
 Before ERVIN, Chief Judge, and MURNAGHAN and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Alpha Pettit, widow of coal miner Glen Pettit, seeks review of the Benefits Review Board's ("the Board") decision affirming the denial of benefits pursuant to the Black Lung Benefits Act, 30 U.S.C. Secs. 901-945 (1986). The Board concluded that the denial determinations made by the Administrative Law Judge ("ALJ") were supported by substantial evidence. Mrs. Pettit contends that the ALJ improperly discounted the decedent's death certificate and this requires that her claim be reconsidered. We agree and remand this case for further proceedings.
 
 
 2
 Glen Pettit had been employed as a coal miner for 17 years when he died on June 5, 1991 at the age of 62. His widow filed for benefits on July 27, 1991 and so her claim is governed in relevant part by 20 C.F.R. Sec. 718.205(c). Accordingly, "[t]he initial burden is upon the claimant ... to develop evidence which meets the requirements of paragraph (c) ...." Sec. 718.205(d). Subparagraph (c) states that "death will be considered to be due to pneumoconiosis ... [w]here competent medical evidence established that the miner's death was due to pneumoconiosis, or ... [it] was a substantially contributing cause or factor leading to the miner's death...." This court has held that " 'pneumoconiosis substantially contributes to death if it serves to hasten death in any way.' " Shuff v. Cedar Coal Co., 967 F.2d 977, 979 (4th Cir.1992), cert. den., 113 S.Ct. 969 (1993). The only issue presented in this case is whether the ALJ, correctly understanding the facts, could have found that there was sufficient evidence to establish "pneumoconiosis substantially contribute[d] to [Mr. Pettit's] death." Four sources of evidence were introduced before the ALJ on this point. The first was the claimant's testimony that she found her husband in the yard having great difficulty breathing, tried to revive him, and called the rescue squad, which transported him to a health care center where he was pronounced dead. The second was Mr. Pettit's death certificate on which the "immediate cause" of death is listed as "Possible Cardiac Arrhythmia and Respiratory Failure" and the "underlying cause" of death is listed as "Coronary Artery Disease [and] Pneumoconiosis." The death certificate was executed by Dr. Elpidio F. Capalad on June 18, 1991. The third was the report of an autopsy, which was performed by Dr. Kanti D. Patel, and which is dated July 11, 1991. In that report, Dr. Patel noted a "moderate degree of pneumoconiosis" with pulmonary emphysema and marked pulmonary anthracosis; however, Dr. Patel offered no opinion in his report as to the cause of Mr. Pettit's death. Rather, as the ALJ noted, Dr. Patel "merely stated his anatomical diagnoses based on the limited autopsy." The final piece of evidence on this point was the report of Dr. Richard L. Naeye, who reviewed the autopsy report and slides. Dr. Naeye opined that "findings of a mild, to moderately severe simple coal worker's pneumoconiosis are present." Dr. Naeye believed that this pneumoconiosis was "probably too mild to have contributed in any way to death" but, again, as the ALJ noted, Dr. Naeye "did not positively rule out pneumoconiosis as contributing to the miner's death. On the other hand, he does not state that it was a factor."
 
 
 3
 The ALJ discounted Dr. Patel's autopsy report and Dr. Naeye's opinion because neither stated a cause of death. Further, although the ALJ noted the claimant's testimony, he did not comment on its relevance as to the cause of death. Finally, as to the death certificate which had been signed by Dr. Capalad, the ALJ discounted it for two reasons. First, he found it "equivocal" because it listed pneumoconiosis as only a "possible" cause of death. Secondly, the ALJ found: "Dr. Capalad is not shown to have attended the miner at or any time prior to death. He signed the death certificate three weeks before the autopsy report was issued." For these reasons, the ALJ denied benefits. The Board affirmed, finding substantial evidence supported the ALJ's "finding that claimant failed to establish that the miner's death was due to pneumoconiosis...." The Board is bound by an ALJ's findings of fact if they are supported by substantial evidence. Wilson v. Benefits Review Bd., 748 F.2d 198, 199-200 (4th Cir.1984). Our review of the Board's decision is limited to a determination of whether the Board committed an error of law and whether the Board adhered to its scope of review. Kowalchick v. Director, OWCP, 893 F.2d 615, 619 (3d Cir.1990). Accordingly, we "independently review the record and 'decide whether the ALJ's findings are supported by substantial evidence.' " Kertesz v. Crescent Hills Coal Co., 788 F.2d 158, 163 (3d Cir.1986) (quoting Walker v. Universal Terminal & Stevedoring Corp., 645 F.2d 170, 172 (3d Cir.1981)).
 
 
 4
 Before us, the Director concedes that much of the ALJ's rationale was erroneous, but nonetheless asserts that the ALJ's conclusion, that the pneumoconiosis was not established as a cause of death, should be affirmed. First, the Director concedes that the ALJ erred in suggesting that Dr. Capalad "was unaware of Dr. Patel's autopsy findings." The Director acknowledges that although Dr. Patel's autopsy report is dated July 11, 1991, the autopsy was, in fact, performed June 5, 1991 and since "Dr. Capalad did not sign the death certificate until June 18, 1991, and noted that Mrs. Pettit had authorized an autopsy for black lung purposes, [it is] concede[d] that Dr. Capalad likely had some knowledge of the autopsy findings." Secondly, the Director concedes that "the ALJ's construction of Dr. Capalad's use of the word 'possible' is incorrect; ... Dr. Capalad used'possible' to modify his opinion concerning cardiac arrhythmia"--not pneumoconiosis.
 
 
 5
 In view of these concessions, we must reverse and remand. Although this record may contain a basis for the ALJ's ultimate decision, the record obviously does not support the basis chosen by the ALJ. It is well-established that a court can affirm administrative agency decisions only for the reasons given by the agency. See SEC v. Chenery Corp., 318 U.S. 80, 95 (1943); King v. Califano, 615 F.2d 1018, 1020 (4th Cir.1980) (remanding case for proper consideration of the evidence because "even if legitimate reasons exist for rejecting or discounting certain evidence, the Secretary cannot do so for no reason or the wrong reason"). Of course, when "it is clear that based on ... valid findings, the agency would have reached the same ultimate result, we do not improperly invade the administrative province by affirming." Salt River Project Agricultural Improvement & Power Dist. v. United States, 762 F.2d 1053, 1060-61 n. 8 (D.C.Cir.1985). Here, however, it is not clear the ALJ would have reached the same ultimate result; we cannot hold as a matter of law there was insufficient evidence that pneumoconiosis was a cause of death so as to require the denial of benefits.
 
 
 6
 In Black Lung cases, it is well established that a death certificate, in and of itself, neither proves nor disproves the cause of death. See, e.g., Risher v. Office of Workers' Compensation Program, 940 F.2d 327, 331 (8th Cir.1991); Hillibus v. United States Department of Labor, BRB, 853 F.2d 197, 204 (3d Cir.1988). Rather, the weight to be given to a death certificate should be determined by reference to other facts, among them whether it was executed with knowledge of information learned from the autopsy. In Wagner v. Beltrami Enterprises, 16 BRB 1-65 (1990), the BRB found that the autopsy stating that miner had pneumoconiosis when he died was insufficient to establish pneumoconiosis as a cause of death. Nevertheless the death certificate lists "anthracosilicosis [with] bilateral pulmonary emphysema 'D' as a significant condition contributing to death." The Board stated "this evidence, if fully credited, is sufficient to establish death due to pneumoconiosis pursuant to Section 718.205(c)." (citing Lukosevicz v. Director, OWCP. 888 F.2d 1001 (3d Cir.1989)). See also, Brown v. Rock Creek Min. Co., Inc., 996 F.2d 812 (6th Cir.1993), (where death certificate listing pneumoconiosis as an other condition significantly contributing to Brown's death and an autopsy report were sufficient to award benefits.) For these reasons, the ALJ's apparent misunderstanding of the facts here critically undermines his decision. Since a proper understanding of those facts might lead him to a different conclusion, we must remand.
 
 
 7
 On remand, the parties should be permitted to submit any testimony or statements from Drs. Capalad, Patel, and Naeye, which clarify their findings. Further, the ALJ should specifically address the probative value of the lay testimony, as to the cause of death.
 
 
 8
 For the above reasons, we reverse the Board's decision and remand this case for reconsideration consistent with this opinion.
 
 REVERSED AND REMANDED