74 F.3d 1240
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PEABODY COAL CO. and Old Republic Ins. Co., Petitioners,
v.
Elizabeth FORD and Director, Office of Workers' Compensation
Programs, U.S. Dept. of Labor, Respondents.
 No. 94-4193.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1996.
 
 Before: MERRITT, Chief Circuit Judge and GUY and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 This appeal involves an application for benefits under the Black Lung Benefits Act, 30 U.S.C. Secs. 901-945, by Elizabeth Ford, the widow of Thomas Ford. We AFFIRM the Board's grant of benefits.
 
 I. FACTS
 
 2
 Mr. Ford filed a Black Lung benefits claim in December 1985,[1] and, one year after his 1988 death, Mrs. Ford filed for survivor's benefits. The merits of the claims were argued before an administrative law judge ("ALJ"), at a formal hearing held in December 1992.
 
 
 3
 In his written opinion, the ALJ found that the weight of the X-ray evidence established that Mr. Ford had pneumoconiosis for purposes of 20 C.F.R. Sec. 718.202(a)(1). This finding was incorporated into the analysis of Mrs. Ford's survivor claim.
 
 
 4
 Using the standard announced by this court in Brown v. Rock Creek Mining Co., 996 F.2d 812 (6th Cir.1993), decided after the December hearing, the ALJ found that pneumoconiosis hastened Mr. Ford's death "in any way" since, according to medical testimony presented by Peabody, pneumoconiosis was a component of the underlying pulmonary condition which resulted in death. The ALJ concluded that Mrs. Ford's claim should be approved.
 
 
 5
 Peabody appealed to the Benefits Review Board, which unanimously upheld the ALJ's decision. This timely appeal followed.
 
 II. ANALYSIS
 
 6
 We review each of the issues below to determine whether the Board adhered to its statutory scope of review, which requires it to affirm an administrative law judge's decision if it is supported by substantial evidence and is in accordance with law. Peabody Coal Co. v. Greer, 62 F.3d 801, 804 (6th Cir.1995). An ALJ's discretionary rulings are reviewed for abuse of discretion and a determination of whether a party was denied a fair hearing. See Bethlehem Mines Corp. v. Henderson, 939 F.2d 143, 146-47 (4th Cir.1991); North Am. Coal Co. v. Miller, 870 F.2d 948 (3d Cir.1989).
 
 
 7
 A. Pneumoconiosis Found Following Consideration of All
 
 Relevant Evidence
 
 8
 Peabody contends that the ALJ failed to follow the mandate of 30 U.S.C. Sec. 923,[2] by failing to consider lung biopsy evidence in the portion of his opinion finding pneumoconiosis. We disagree. The statute does not mandate a consideration of all evidence in each section of the ALJ's opinion. As the Supreme Court stated, "As long as relevant evidence [is] considered at some point by the ALJ, the demand that the decision be made on the complete record is satisfied." Mullins Coal Co. v. Director, O.W.C.P., 484 U.S. 135, 150 (1987). The ALJ here considered all the evidence, specifically, the X-rays, pulmonary function studies, arterial blood gas tests, physicians' narrative reports, physicians' deposition evidence, and addressed with particularity the biopsy evidence presented by Peabody. Only after considering all the evidence did the ALJ conclude that Mr. Ford suffered from pneumoconiosis and thus there was no error in this aspect of the decision.
 
 B. Application of the Brown Standard
 
 9
 During the pendency of Mrs. Ford's claim, we decided Brown v. Rock Creek Mining Co., 996 F.2d 812 (6th Cir.1993), in which we refined the meaning of the "substantially contributing cause or factor" language of 20 C.F.R. Sec. 718.205[3]. According to Brown, "substantially contributing cause or factor" means pneumoconiosis "serve[d] to hasten ... death in any way." Brown, 996 F.2d at 817. Peabody contends that Brown created a new fact element mandating a new hearing in which Peabody may present new, relevant evidence refuting the ALJ's holding that pneumoconiosis hastened Mr. Ford's death in any way. In support of its position, Peabody directs us to cases in which "new fact elements" prompted courts to order a new hearing. These cases do not help Peabody here.
 
 
 10
 In reality, Peabody seeks an opportunity to disavow evidence it presented at the December hearing. However, the clarification Brown gave to Sec. 718.205(c)(2) did not create a "new fact element" which must be proved by one of the parties. Instead, it refined a standard already in existence, one which Peabody sought to meet. At the December hearing, Peabody presented the deposition of Dr. Frank Taylor, which included Dr. Taylor's testimony that coal miner's pneumoconiosis was a component, albeit not the most important component, in Mr. Ford's death. That evidence addressed the relevant inquiry prior to Brown and continued to do so after Brown. On the facts of this case, refusing the petition for a new hearing works no manifest injustice. See Peabody Coal Co. v. Greer, 62 F.3d 801, 804-05 (6th Cir.1995); Harlan Bell Coal Co. v. Lemar, 904 F.2d 1042, 1047-48 (6th Cir.1990); Tackett v. Benefits Review Bd., 806 F.2d 640, 642 (6th Cir.1986). The denial of the petition for a new hearing is affirmed.
 
 
 11
 C. Substantial Evidence Supported a Finding that
 
 Pneumoconiosis Hastened Death
 
 12
 Peabody argues that there is absolutely no evidence to support a finding that pneumoconiosis hastened Mr. Ford's death in any way. Peabody contends that the ALJ made this determination based solely on the fact that Dr. Taylor "could not 100% rule out pneumoconiosis as a factor in Ford's death." Our reading of the record persuades us that this contention is meritless.
 
 
 13
 The ALJ based his decision on the testimony of Peabody's witness, Dr. Frank Taylor, that there was "probably some component in [the cause of death] of coal workers' pneumoconiosis. It's my opinion it's not the most important component, but there is a component there." Furthermore, Dr. Taylor found that pneumoconiosis played some part in Mr. Ford's pulmonary distress. We find that the testimony of Dr. Taylor provided "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion" that pneumoconiosis hastened Mr. Ford's death in some way. Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).
 
 
 14
 D. Proper Exclusion of Evidence Submitted in Untimely Manner
 
 
 15
 Peabody argues that the ALJ erred in refusing to admit into evidence a medical report Peabody offered at the December hearing containing biopsy evidence obtained shortly before Mr. Ford's death that Mr. Ford did not suffer from pneumoconiosis. Documentary evidence, which was not submitted to the district director, may be "received in evidence subject to the objection of any party, if such evidence is sent to all other parties at least 20 days before a hearing is held in connection with the claim." 20 C.F.R. Sec. 725.456(b)(1). The exception to this rule, found in 20 C.F.R. Sec. 725.456(b)(2), states that evidence not submitted in accordance with (b)(1) "may be admitted at the hearing ... upon a showing of good cause why such evidence was not exchanged in accordance with this paragraph."
 
 
 16
 While Peabody contends that it showed good cause for its tardy submission, it admits that it made no effort to obtain Mr. Ford's medical records until after the re-scheduled August, 1991, hearing and after the December hearing had been scheduled. Peabody's own practicality argument relative to the slow processing of these claims by DOL would have required it to be prepared at least by August 1991, the date of the originally scheduled hearing. We refuse to find an abuse of discretion where Peabody's tardy commencement of its search for evidence, Peabody's lack of reasonable diligence, and the fact that the timely institution of evidentiary development would have avoided the entire problem, all support the Board's decision. Under these circumstances, we will not find that the Board abused its discretion.
 
 III. CONCLUSION
 
 17
 Accordingly, the ruling of the Benefits Review Board is AFFIRMED.
 
 
 
 [1]
 This claim was denied in the same decision which approved Mrs. Ford's claim. The denial of Mr. Ford's claim is not presently before us, although we review it insofar as the determination of his pneumoconiosis was incorporated into the determination of Mrs. Ford's claim
 We also note that prior to his death, the Kentucky Workers' Compensation Board approved Mr. Ford's occupational pneumoconiosis claim. The benefits from this claim, which Mrs. Ford continues to receive, exceed the federal benefit payments. Therefore, unless the state benefits cease or decrease to an amount below federal benefits, Mrs. Ford will receive no federal benefit payments. See 30 U.S.C. Sec. 932(g).
 
 
 [2]
 This section states: "In determining the validity of claims under this part, all relevant evidence shall be considered, including, where relevant, medical tests such as blood gas studies, X-ray examination, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the claimant's physician...."
 
 
 [3]
 20 C.F.R. Sec. 718.205(c) states that
 death will be considered due to pneumoconiosis if any of the following criteria is met:
 (1) Where competent medical evidence established that the miner's death was due to pneumoconiosis, or
 (2) Where pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or where the death was caused by complications of pneumoconiosis, or
 (3) Where the presumption set forth at Sec. 718.304 is applicable.