*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0035p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

GARTHA C. CONLEY, widow of Dave Conley,
>                                          *Petitioner,*

>                   *v.*                                          No. 09-3039

NATIONAL MINES CORPORATION; OLD
REPUBLIC INSURANCE COMPANY; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF
LABOR,

>                                          *Respondents.*

On Petition for Review of an Order
of the Benefits Review Board.
No. 08-0355 BLA.

Argued: January 12, 2010

Decided and Filed: February 12, 2010

Before: BATCHELDER, Chief Judge; SUTTON, Circuit Judge;
WISEMAN, District Judge.[*]

_____

### COUNSEL

**ARGUED:** James D. Holliday, Hazard, Kentucky, for Petitioner. Laura Metcoff Klaus, GREENBERG TRAURIG, Washington, D.C., for Respondents. **ON BRIEF:** James D. Holliday, Hazard, Kentucky, for Petitioner. Laura Metcoff Klaus, Mark Elliott Solomons, GREENBERG TRAURIG, Washington, D.C., for Respondents.

---

[*]The Honorable Thomas A. Wiseman, Jr., Senior United States District Judge for the Middle District of Tennessee, sitting by designation.

---

**OPINION**

---

WISEMAN, District Judge.   Petitioner Gartha C. Conley seeks review of an order of the Benefits Review Board ("Review Board") dated November 25, 2008, which reversed an Administrative Law Judge's award of black lung benefits on a widow's claim filed by Mrs. Conley under the Black Lung Benefits Act ("BLBA"), 30 U.S.C. §§ 901–945, after her husband Dave Conley died of metastatic lung cancer. Respondents are the National Mines Corporation ("NMC"), Old Republic Insurance Company, and Director, Office of Workers' Compensation Programs, United States Department of Labor.   The sole issue presented in this appeal is whether the Review Board erred in reversing the ALJ's decision on the grounds that the decedent's treating physician's opinion was insufficient to carry the widow's burden of proof, based on the standard previously articulated by this Court in *Eastover Mining Co. v. Williams*, 338 F.3d 501 (6th Cir. 2003).   For the reasons set forth herein, we AFFIRM.

I.

Dave Conley, a heavy smoker for decades,[1] was diagnosed with lung cancer in 1994, for which he underwent radiation and chemotherapy treatment.   By the time it was discovered, however, the disease had already spread to his lymph nodes and was later found to have metastasized to his brain, pancreas and liver.   He died on March 25, 1996. The "immediate cause" of his death, as noted on his death certificate, was "[c]ardiorespiratory failure due to consequence of pulmonary malignancy with metastasis."   (Appendix ("App.") 69.)   The death certificate, which was completed by his treating physician, Dr. Ira Potter, also identified the decedent's "history of cigarette smoking [and] coal mining" as "[o]ther significant conditions [that] contributed to death but [did] not result[] in the underlying cause."   (*Id*.)

---

[1]The evidence regarding exactly how long Mr. Conley smoked is conflicting, but he smoked heavily for a minimum of eighteen or twenty years and possibly as many as fifty years.

Petitioner Gartha C. Conley filed for benefits in June 2005, nine years after her husband had died of lung cancer.**2**  After the Department of Labor ("DOL") collected Mr. Conley's work and medical records, the claim proceeded to the Office of Administrative Law Judges for a hearing, which was conducted on May 2, 2007. Administrative Law Judge ("ALJ") Larry S. Merck presided over the hearing and issued a decision and order awarding benefits on January 23, 2008. (App. 17–36.)  The parties agreed that lung cancer was the principal cause of death and that the lung cancer was related to Conley's history of smoking rather than to coal mining.  It was also undisputed that Mr. Conley had *clinical* pneumoconiosis arising out of his coal mine employment. Consequently, the only issue, in theory, that required resolution by the ALJ was whether Mr. Conley's clinical pneumoconiosis was a "substantially contributing cause or factor leading to" his death.  20 C.F.R. § 718.205(c)(2).  That was the question upon which NMC focused its arguments.  The ALJ, in fact, credited the opinions of NMC's experts who concluded that the decedent's clinical pneumoconiosis did not cause or contribute to his death.

However, the ALJ devoted a substantial portion of his analysis to the question of whether the record supported a conclusion that Mr. Conley had chronic obstructive pulmonary disease ("COPD") that was caused at least in part by his exposure to coal dust and therefore qualified as *legal* pneumoconiosis, separate and apart from the undisputed diagnosis of clinical pneumoconiosis.  Ultimately, the ALJ made an independent finding that Mr. Conley had "legal" pneumoconiosis as well as "clinical" pneumoconiosis, and that the legal pneumoconiosis was a contributing cause of death.**3**

---

**2**The delay in filing is related to the fact that Mrs. Conley was receiving workers' compensation benefits from the Commonwealth of Kentucky, which offset any benefits that might have been awarded under the BLBA.  Conley was awarded total disability for black lung in his Kentucky state workers' compensation claim in 1989, and Mrs. Conley received those benefits through June 2006.

**3**The term "pneumoconiosis" is defined by statute as a "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b) (1994).  The regulations clarify that this definition "includes both medical, or 'clinical,' pneumoconiosis and statutory, or 'legal,' pneumoconiosis."  20 C.F.R. § 718.201(a).  The regulations distinguish between clinical and legal pneumoconiosis as follows:

> (1) Clinical Pneumoconiosis.  "Clinical pneumoconiosis" consists of those diseases recognized by the medical community as pneumoconioses, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in

Pneumoconiosis, whether legal or clinical, is considered a "substantially contributing cause" of death if it "hastens death." 20 C.F.R. § 718.205(c)(5). Based on the opinion of Mr. Conley's long-time treating physician, Dr. Potter, who was not a pulmonary specialist, the ALJ concluded that Mr. Conley's death was "hastened" by legal pneumoconiosis (COPD) and awarded benefits based upon that conclusion. Specifically, Dr. Potter testified as follows:

> Q53    Okay. Do you believe that lung cancer would have killed Mr. Conley irrespective of his lung disease?
>
> A       Yes.
>
> Q54 Do you have an opinion as to whether having the degree of COPD that he had [previously described as moderate] substantially hastened his death?
>
> A       I, I am of the group that certainly believes that people with chronic lung disease have less respiratory reserve, less capacity to deal with these things, and that therefore it does make a difference.
>
> Q55    Could you explain to us from a physiological standpoint or an anatomical standpoint what damage COPD causes and why it would make a person less likely to survive?
>
> A       COPD destroys air cells. The, the condition leads to destruction of the alveolar sacs. And this decreases your respiratory reserve, your ability – we all have a respiratory reserve when we are walking around and we call upon it when we exert ourselves. I think that you lose a lot of that when you have COPD or interstitial fibrosis either one, and that is part of our physical resistance. In other words, the healthier we are, the better we're able to deal with serious problems.
>
> Q56    Can you estimate – is there any way to tell how much longer Mr. Conley might have survived had he not had legal pneumoconiosis?

---

the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment. . . .

(2) Legal Pneumoconiosis. "Legal pneumoconiosis" includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment. This definition includes, but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment.

20 C.F.R. § 718.201(a).

A     No.

(App. 47–48.)[4]

Because the ALJ found that Dr. Potter's opinion was "based on objective medical evidence, as defined in § 718.201 to include medical testing and Claimant's medical and work histories" (App. 26), and "supported by his treatment and hospitalization notes, medical reports, deposition, and Dr. Potter's familiarity with [Mr. Conley's] condition due to his special relationship with [him] as his treating physician for twenty-one years" (App. 29), the ALJ deemed Dr. Potter's report to be "well-reasoned and well-documented." (App. 26, 29.) On that basis, and in reliance upon his reading of § 718.104(d), the ALJ accorded Dr. Potter's opinion "additional probative weight." (App. 29.)

The ALJ also considered the opinions of Dr. Bruce Broudy and Dr. A. Dahhan, both board-certified in internal and pulmonary medicine and B-readers. As indicated above, although he accepted those physicians' opinions that *clinical* pneumoconiosis did not contribute to or hasten Conley's death, he discounted their opinions that *legal* pneumoconiosis did not contribute to or hasten his death. In fact, both Dr. Broudy and Dr. Dahhan found that Conley had, at most, minor respiratory obstruction, and what little he had was wholly attributable to cigarette smoking rather than to coal mining. In other words, both physicians implicitly concluded that Conley did not have legal pneumoconiosis at all, and therefore did not address the issue of whether legal pneumoconiosis hastened his death. Dr. Dahhan did testify unequivocally, however, that Conley's metastatic lung cancer was neither related to nor hastened by inhalation of coal dust and that his death from lung cancer would have occurred at the same time and in the same manner regardless of whether he had ever worked as a coal miner. In a second supplemental report dated March 20, 2007, Dr. Dahhan expressly disagreed with Dr. Potter's conclusion that Mr. Conley's weakened lung condition made him more susceptible to lung cancer, noting that Conley was not able to undergo a complete

---

[4]Dr. Potter conceded that cigarettes rather than coal-dust exposure caused Mr. Conley's lung cancer. (App. 54.)

surgical resection of his lung cancer because it had already metastasized to the hilar nodes. He also noted, based on the oncologist's records, that Conley tolerated radiation therapy well and concluded that there was no evidence in the record suggesting that Conley would have done better in his fight against lung cancer if he had not also suffered from pneumoconiosis.

The ALJ nonetheless concluded that Dr. Broudy and Dr. Dahhan failed to offer any explanation for disregarding Conley's lengthy coal-mining career as a possible cause for his chronic respiratory ailments and instead attributing them solely to his smoking. Because he found these "conclusory" opinions regarding the diagnosis and etiology of the bronchitis not to be well reasoned or well documented, the ALJ accorded little probative weight to Dr. Broudy's and Dr. Dahhan's opinions in reaching a decision as to whether "legal" pneumoconiosis contributed to Mr. Conley's death. (App. 33.) Instead, he accorded more weight to Dr. Potter's report and concluded on the basis of that report that Mrs. Conley had established by a preponderance of the evidence that Mr. Conley's legal pneumoconiosis (COPD and chronic bronchitis) caused or contributed to his death. He therefore awarded benefits under the BLBA. (App. 33–34.)

NMC appealed that decision to the Review Board. The Review Board, applying Sixth Circuit law, held simply that the ALJ had erred in finding there was sufficient evidence in the record to establish that Conley's death was hastened by pneumoconiosis in light of the Sixth Circuit's holding in *Eastover Mining Co. v. Williams*, 338 F.3d 501 (6th Cir. 2003). In that case, this Court held that "pneumoconiosis only 'hastens' a death if it does so through a specifically defined process that reduces the miner's life by an estimable time." *Id.* at 518.

## II.

## A.

The Sixth Circuit reviews the legal issues raised in this administrative appeal *de novo* but accords deference to relevant factual findings. *Eastover Mining*, 338 F.3d at 508. The ALJ's factual determinations must be upheld if they are supported by

substantial evidence in the administrative record, and the decision as a whole must be affirmed if the ALJ's decision was rational, supported by substantial evidence in the record, and consistent with controlling law. *Glen Coal Co. v. Seals*, 147 F.3d 502, 510 (6th Cir. 1998). "Where, however, an ALJ has improperly characterized the evidence or failed to [take] account of relevant record material, deference is inappropriate and remand is required." *Eastover Mining*, 338 F.3d at 508 (citing *Dir., OWCP v. Rowe*, 710 F.2d 251, 255 (6th Cir. 1983)). Further, a failure by the ALJ to apply the correct legal standard presents a legal question over which the Review Board and this Court have plenary review. *Arch of Ky., Inc. v. Dir., OWCP*, 556 F.3d 472, 477 (6th Cir. 2009).

Technically, of course, this Court is reviewing the Review Board's decision reversing the ALJ, not the ALJ's decision itself. The Court is not called upon to determine whether the Review Board's decision was supported by substantial evidence, but whether the Review Board correctly concluded that the ALJ's decision was *not* supported by sufficient evidence based upon the legal standards we have established. Thus, the standards of review for the Review Board and for the Sixth Circuit are the same. *Eastover Mining*, 338 F.3d at 508 n.9 (citations omitted).

B.

"The Black Lung Benefits Act creates an adversarial administrative procedure designed to require mining companies to pay those miners (or the survivors of those minors) who legitimately suffer from a class of various coal dust-related pulmonary injuries commonly categorized as pneumoconiosis." *Eastover Mining*, 338 F.3d at 508 (6th Cir. 2003) (internal citation omitted). Under the BLBA and the implementing regulations, benefits are provided to the eligible survivors of a miner whose death was due to pneumoconiosis. In order to be eligible for survivor's benefits, a petitioner bears the burden of proving, *Eastover Mining*, 338 F.3d at 508, that the miner had pneumoconiosis that "arose out of coal mine employment," and that his death was "due to pneumoconiosis." 20 C.F.R. § 718.205(a). For claims arising after 1982, a coal miner's death will be considered "due to" pneumoconiosis if either one of the following criteria is met:

(1) Where competent medical evidence establishes that pneumoconiosis was the cause of the miner's death, or

(2) Where pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or where the death was caused by complications of pneumoconiosis. . . .[5]

*Id.* § 718.205(c)(1)–(2).  The regulations further provide that survivor's benefits are not available where "the principal cause of death was a medical condition not related to pneumoconiosis, unless the evidence establishes that pneumoconiosis was a substantially contributing cause of death."  *Id.* § 718.205(c)(4).  "Pneumoconiosis is a 'substantially contributing cause' of a miner's death if it hastens the miner's death."  *Id.* § 718.205(c)(5).

In the present case, the parties agree that metastatic lung cancer was the principal cause of Dave Conley's death.  The question before this Court is whether the Review Board applied the correct legal standard and appropriately reviewed the ALJ's factual findings when it concluded, as a matter of law, that Dr. Potter's opinion was insufficient to establish that pneumoconiosis "hastened" Mr. Conley's death.[6]

C.

In *Eastover Mining*, the ALJ awarded benefits to a miner's widow and the Benefits Review Board affirmed.  The mining company appealed, and the Sixth Circuit reversed, holding, on the basis of a number of grounds, that the ALJ's decision was not supported by substantial evidence.  In that case, the direct cause of the miner's death was either acute gastrointestinal bleeding or a pulmonary embolism.  His treating physician submitted a report in which he concluded, "'within a reasonable degree of medical probability,' that pneumoconiosis 'hastened [Decedent's] death.'" *Eastover Mining*, 338 F.3d at 505 (quoting from the administrative record) (alteration in original).  In support

---

[5]A proven diagnosis of "complex pneumoconiosis" may also establish the requisite causation, 20 C.F.R. § 718.205(c)(3), but it is undisputed here that Mr. Conley did not suffer from complex pneumoconiosis.

[6]Although NMC contested on appeal to the Review Board the ALJ's factual determination that Mr. Conley had legal as well as clinical pneumoconiosis, it has not raised that issue in the present appeal.

of that opinion the doctor hypothesized that, although the pulmonary embolism was the direct cause of death, "pneumoconiosis hastened his demise because the miner's 'lack of oxygen [and] his retained carbon dioxide all played an effect on all parts of his body.'" *Id.* at 505 n.6 (quoting from the administrative record).

The Court found that one of the primary deficiencies in the ALJ's decision was his reliance upon the treating physician's opinion linking the miner's death to his pneumoconiosis, as that opinion was entirely conclusory and based upon nothing but the physician's own unsubstantiated belief:

> Put differently, Woolum [the treating physician] argued that because Decedent had pneumoconiosis, his body lacked oxygen and excessively retained carbon dioxide. This weakened the miner, "played an effect on all parts of his body," and thereby hastened a death that would have occurred anyway from the pulmonary embolus. Even if this is an accurate medical conclusion, it is legally inadequate.
>
> Again, Petitioner must show that pneumoconiosis "hasten[ed] the miner's death." 20 C.F.R. § 718.205(c)(5). One can always claim, as Woolum did, that if pneumoconiosis makes someone weaker, it makes them less resistant to some other trauma. If, for instance, a miner with pneumoconiosis gets hit by a train and bleeds to death, Woolum (or someone adopting his position) would argue that the pneumoconiosis "hastened" his death because he bled to death somewhat more quickly than someone without pneumoconiosis. This is absurd, of course, and presumably not what Congress meant by "hasten." Under Woolum's interpretation, pneumoconiosis would virtually always "hasten" death to at least some minimal degree. *Legal pneumoconiosis only "hastens" a death if it does so through a specifically defined process that reduces the miner's life by an estimable time.* Woolum's letter is conclusory and inadequate because Woolum just asserts that because (in Woolum's opinion) the miner had pneumoconiosis, the disease must have hastened his death.

*Eastover Mining*, 338 F.3d at 517–18 (emphasis added).

Unless the italicized portion of the quoted passage can be considered *dictum*, this panel is bound by it. The petitioner in this case does not seriously contend that it is *dictum*, and this panel agrees that it is not. Moreover, consistent with *Eastover Mining*, a conclusory, unsupported opinion such as the one offered by Dr. Potter in this case is

insufficient to support the determination that Mr. Conley's legal pneumoconiosis hastened his death.

There is some room for argument, we acknowledge, about what it means to hasten death "by an estimable time." Does that mean that every medical opinion must quantify a precise number of days by which pneumoconiosis hastens death? Will an estimate of months suffice? Of years? Or will a range of any of the above do the trick? And what if for a medically legitimate reason an estimate cannot be made? We believe that, as is so frequently true when it comes to the application of a legal principal, context and common sense will govern the resolution of these questions. For instance, the "estimable time" language employed in *Eastover Mining* does not exist in a vacuum; it follows upon the heels of the requirement that legal pneumoconiosis be shown by medical opinion to hasten death "through a specifically defined process." A conclusory medical opinion, in other words, will not suffice. Neither will an opinion, like Dr. Potter's, that addresses the issue at such a high level of generality—"the healthier we are, the better we're able to deal with serious problems"—that it amounts to nothing more than a conclusion. A medical opinion that pneumoconiosis expedited death through a "specifically defined process" must explain why that is so and generally should be able to explain how and to what extent—customarily through a range of time—that process hastened a specific patient's death. In that regard, it bears emphasis that every death, like every person, is different. More precision may legitimately be expected when it comes to the relationship of legal pneumoconiosis to some primary illnesses than to others.

In the end, however, we need not decide today whether a medical opinion may suffice under *Eastover Mining* without making some range-of-time estimate in describing the "specifically defined process" by which legal pneumoconiosis sped the demise of an individual already suffering from a deadly illness, because the issue is not presented. Here, Dr. Potter's opinion fell well short of "specifically defin[ing]" the process by which pneumoconiosis hastened Dave Conley's death. As stated in *Eastover Mining*, "[o]ne can always claim . . . that if pneumoconiosis makes someone weaker, it

makes them less resistant to some other trauma." 338 F.3d at 517. Dr. Potter's opinion, like that of the physician in *Eastover Mining*, even if medically true, is legally inadequate to support his conclusion that legal pneumoconiosis hastened Dave Conley's death.[7] The petitioner bore the burden of proof as to that issue, and her failure to present adequate evidence to support the ALJ's ruling is fatal to her appeal.

This Court therefore affirms the decision of the Benefits Review Board.

---

[7]The Court notes that the case upon which the Petitioner relies, *Brown v. Rock Creek Mining Co.*, 996 F.2d 812 (6th Cir. 1993), even if still current, would not dictate a different conclusion. *Brown* was decided under the 1992 version of 20 C.F.R. § 718.205, which did not contain the "hastens death" language included in the current version. Instead, it provided that death would be considered "due to" pneumoconiosis if pneumoconiosis was a "substantially contributing cause" of death. 20 C.F.R. § 718.205(c)(2) and (4) (1992). The primary importance of *Brown* was that it embraced the "hastens death" standard that was subsequently incorporated into the language of 20 C.F.R. § 718.205. *See Brown*, 996 F.2d at 816 ("The statutory language, the administrative purpose in adopting the regulation, and the well-reasoned interpretations of our sister circuits . . . are persuasive that the appropriate standard to be adopted by this circuit is that [pneumoconiosis] will be found to be a 'substantially contributing cause or factor' of a miner's death in a case in which it has actually hastened his death."). Applying that standard, the Court in *Brown* reversed and remanded for payment of benefits based upon a finding that "the overwhelming evidence was that pneumoconiosis hastened the miner's death" in that case. *Id.*