**Jewell SHUFF, widow of Paul Shuff, Petitioner,**

v.

**CEDAR COAL COMPANY; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

**No. 91–2572.**

United States Court of Appeals, Fourth Circuit.

Argued April 8, 1992.

Decided June 18, 1992.

---

**4.** The bankruptcy court has already avoided a second IRS lien, because the IRS filed it after Hudgins petitioned for bankruptcy. That lien, for approximately $70,000, is not at issue here.

Edward Waldman, argued, Office of the Sol., U.S. Dept. of Labor, Washington, D.C., W. Richard Staton (G. Todd Houck, on the brief), Moler & Staton, Mullens, W.Va., argued, for petitioner.

David Steven Russo, Robinson & McElwee, Charleston, W.Va., for respondent.

David S. Fortney, Deputy Sol. of Labor, Donald S. Shire, Associate Sol., Barbara J. Johnson, Counsel for Appellate Litigation, Office of the Solicitor, U.S. Dept. of Labor, on the brief, Washington, D.C.

Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.

ERVIN, Chief Judge:

Jewell L. Shuff seeks survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945, in connection with her husband's death. She argues that the Administrative Law Judge ("ALJ") and the Benefits Review Board ("BRB") applied too stringent a standard in evaluating whether pneumoconiosis was a "substantially contributing cause or factor" leading to her husband's death. We agree with Mrs. Shuff, reverse the BRB and remand the case for further proceedings.

I.

The miner, Paul B. Shuff, filed a claim for benefits under the Black Lung Benefits Act on May 24, 1983. While his claim was pending, Mr. Shuff died on July 28, 1983. Mr. Shuff's widow, Jewell L. Shuff, the claimant here, filed a claim for survivor's benefits on August 18, 1983. Cedar Coal Company ("Cedar Coal") is, by agreement of all the parties, the responsible operator potentially liable for benefits.

After both claims were administratively denied, Mrs. Shuff requested a hearing before an ALJ. On August 29, 1989, the ALJ issued a decision and order awarding benefits on the living miner's claim and denying benefits on the survivor's claim. The ALJ found that Mr. Shuff had been totally dis-

abled by pneumoconiosis and, therefore, was entitled to benefits from April 1983, when Mr. Shuff terminated his coal mine employment, until June 1983, the month before Mr. Shuff died. The ALJ found that pneumoconiosis was not a "substantially contributing cause of death," however, and therefore ruled that Mrs. Shuff was not entitled to survivor's benefits under 20 C.F.R. § 718.205(c).*

Mrs. Shuff appealed the ALJ's determination to the BRB, and Cedar Coal cross-appealed the grant of benefits on the living miner's claim. The BRB affirmed the ALJ on both issues. Mrs. Shuff appeals to this court the denial of survivor's benefits. Cedar Coal does not appeal the grant of benefits on the living miner's claim.

### II.

▉ The medical evidence is clear, and the ALJ found, that the predominant cause of Mr. Shuff's death was pancreatic cancer which had metastasized, affecting other internal organs. However, the immediate precipitating cause of death, according to the bulk of the medical evidence, was pneumonia. The ALJ correctly observed:

[T]he central question in this case is whether pneumoconiosis was a substantially contributing cause of death ... insofar as it made the miner more susceptible to pneumonia, which was the immediate cause of death.

J.A. at 22. The ALJ concluded that while "it appears that pneumoconiosis may have hastened ... death," the fact that Mr. Shuff's death was "imminent" from the pancreatic cancer, and that "the cancer itself made Mr. Shuff more susceptible to pneumonia," meant that pneumoconiosis was not a substantially contributing cause of death. J.A. at 24. Accordingly, the ALJ denied survivor's benefits. The BRB found that the ALJ "acted within his discretion in concluding" that the medical opinions did not establish that pneumoconi-

osis was a substantially contributing factor in the miner's death. J.A. at 30.

▉ The Director, Office of Workers' Compensation Programs, United States Department of Labor (the "Director" or "DOWCP"), has adopted the position that "pneumoconiosis substantially contributes to death if it serves to hasten death in any way." DOWCP Br. at 8. The Director's interpretation of the regulations is entitled to substantial deference from this court. *Pauley v. BethEnergy Mines, Inc.,* — U.S. —, —, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604, 624 (1991); *Adkins v. Director, OWCP,* 878 F.2d 151, 152–53 (4th Cir.1989).

The Third Circuit has adopted the Director's position on this issue. *See Lukosevicz v. Director, OWCP,* 888 F.2d 1001 (3d Cir.1989). The facts of *Lukosevicz* were nearly identical to those of the present case. In that case, a miner who was totally disabled by pneumoconiosis also died of pancreatic cancer. The physician who conducted the autopsy indicated that the miner suffered from pulmonary emphysema related to his pneumoconiosis, and that "'this condition shortened Mr. Lukosevicz' life, albeit briefly.'" *Id.* at 1003 (quoting letter of Dr. Ronald K. Wright). The BRB affirmed denial of survivor's benefits to Lukosevicz' widow, despite the Director's interpretation of "substantially contributing cause" as any condition that hastens the miner's death. The Third Circuit, in a well reasoned opinion, analyzed the legislative history of the Black Lung Benefits Act and the history of the Department of Labor's regulations and concluded that the Director's position was not an unreasonable interpretation of the regulations. Accordingly, the *Lukosevicz* court adopted the Director's position that pneumoconiosis should be considered a "substantially contributing cause" of a miner's death if it actually hastened the miner's

---

* According to 20 C.F.R. § 718.205(a), "Benefits are provided to eligible survivors of a miner whose death was due to pneumoconiosis." Under 20 C.F.R. § 718.205(c), for claims filed on or after January 1, 1982, "death will be considered to be due to pneumoconiosis if ... pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or ... the death was caused by complications of pneumoconiosis...." Mrs. Shuff's claim was filed after January 1, 1982, and therefore was properly evaluated under this regulation.

death. *Id.* at 1006. We agree with *Lukosevicz*, for the reasons articulated therein, and likewise adopt the Director's position.

Cedar Coal Company argues that, contrary to the holding of *Lukosevicz*, the Director's interpretation *is* unreasonable because, by treating *any* hastening of death as a "substantially contributing cause," the interpretation reads the word "substantially" out of the regulation. This argument misses the mark. Cedar Coal acknowledges that "substantially contributing" is not defined anywhere in the regulations. Without further refinement, the phrase provides an unworkable standard for evaluating the degree of causative involvement pneumoconiosis must have in a miner's death in order for that death to be considered "due to pneumoconiosis." The Director, by interpreting "substantially contributing" as inclusive of any condition that hastens the miner's death, has attempted to give substance to the regulation. Rather than disregarding the word "substantially," the Director's interpretation seeks to provide the phrase with a workable definition. As a result, we reject Cedar Coal's argument, and we defer to the Director's reasonable interpretation of the regulation.

We note that in the present case the BRB made no effort to distinguish *Lukosevicz*. The BRB noted only that the present case arose within the jurisdiction of the Fourth Circuit rather than the Third. We do not consider this a legally persuasive ground for distinction. Likewise, the BRB gave no explanation for its rejection of the Director's interpretation of the regulations. We are mystified as to how the BRB could have reached its decision in the face of such obviously relevant authority, and we are left with the distinct impression that the BRB did not, in this case, carry out its statutorily imposed responsibilities in good faith. We trust that, in the future, the BRB will attempt to support its decisions with at least a semblance of legal reasoning.

### III.

 The final issue we must decide is whether the ALJ's statement that "[c]er-

tainly it appears that pneumoconiosis may have hastened ... death insofar as it made [Mr. Shuff] more susceptible to pneumonia," should be considered to be a finding that pneumoconiosis *did* hasten Mr. Shuff's death, entitling Mrs. Shuff to benefits, or whether we must remand the case for a finding on whether the pneumoconiosis did, in fact, hasten Mr. Shuff's death. In light of the conflicting medical evidence and the inconclusive nature of the ALJ's statement, we find that we must remand the case to the BRB with instructions to vacate its order and to remand the case to the ALJ for a definitive finding as to whether the pneumoconiosis actually hastened Mr. Shuff's death. Accordingly, this case is hereby

REVERSED AND REMANDED.