United States Court of Appeals,

Eleventh Circuit.

No. 95-6900.

Hattie BRADBERRY, Petitioner,

v.

DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS, United States Department Of Labor, USX Corporation, Respondents.

July 29, 1997.

Petition for Review of a Decision and Order of the Benefits Review Board of the United States Department of Labor. (Agency No. 93-2440-BLA).

Before HATCHETT, Chief Judge, BIRCH, Circuit Judge, and CLARK, Senior Circuit Judge.

BIRCH, Circuit Judge:

This petition for review of a decision and order of the Benefits Review Board ("BRB") of the United States Department of Labor presents the first impression issue for this circuit of the proper legal standard for deciding whether a surviving spouse of a deceased coal miner has shown that the miner's death was "due to" pneumoconiosis, or black lung disease, under 30 U.S.C. § 921(a) and 20 C.F.R. § 718.205(c). We also decide whether the BRB erred in affirming the administrative law judge's ("ALJ's") denial of surviving spouse's benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945, based on the ALJ's weighing of the evidence. Because we find that the ALJ failed to apply the proper legal standard in determining whether the miner's death was "due to" pneumoconiosis and failed to weigh properly the evidence, we vacate the decision and order of the BRB and remand for further proceedings.

I. BACKGROUND

Hattie Bradberry was married to James Bradberry, who retired in 1984 after thirty-eight years of employment in a coal mine owned by the predecessor in interest of USX Corporation ("USX").[1] In 1984 and 1986, James Bradberry, claiming that he was totally disabled by

---

[1]The Department of Labor determined that USX is the appropriate responsible party that is liable for any benefits that are awarded to Hattie Bradberry. The parties do not challenge this determination in this petition for review.

pneumoconiosis, applied for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901-945. An ALJ denied his application for benefits because he determined that James Bradberry was not "totally disabled," as required by 20 C.F.R. § 718.204.[2]

James Bradberry was treated from 1986 by Dr. Avsar, as well as a pulmonary specialist and several other physicians, for his chronic hypertension and pulmonary disease. He was diagnosed as having both restrictive and obstructive pulmonary disease related to a history of working in coal mines and smoking.[3] On October 9, 1990, James Bradberry was seen in the emergency room by Dr. Avsar's partner, Dr. Rosemore, for shortness of breath and "substernal fullness."[4] R1-33. Dr. Rosemore admitted him to the hospital and continued to treat him as an inpatient until his death at the age of sixty-seven on October 22, 1990. James Bradberry's death certificate reveals four causes of death: (1) "Myocardial Infarction—Pulmonary Edema," (2) "Chronic Obstructive Pulmonary Disease," ["COPD"] (3) "Coal Workers Pnuemoconisosis [sic] (Black Lung Disease)," and (4) "Acute Tubular Necrosis."[5] R1-31.

Hattie Bradberry subsequently filed an application for survivor's benefits under the Black Lung Benefits Act. The Department of Labor denied the claim, and Hattie Bradberry requested a

---

[2]The denial was affirmed by the BRB; no petition for review of that decision followed. Thus, the decision became final. James Bradberry's application for benefits is not before this court, only Hattie Bradberry's application for survivor's benefits.

[3]Various x-rays taken between 1974 and the date of James Bradberry's death were interpreted differently by various physicians. Some physicians determined that the x-rays were positive for pneumoconiosis and others disagreed.

[4]In addition to recording cardiac findings in the notes made immediately after the emergency room visit, Dr. Rosemore noted several respiratory abnormalities. Specifically, Dr. Rosemore indicated that James Bradberry was hypoxic and appeared to be in "severe respiratory distress." R1-33. Dr. Rosemore also indicated that "[b]ilateral rales and some expiratory wheezes [were present] in all lung fields" and that a chest x-ray showed "Type II bullous disease and pulmonary edema." In the discharge summary written after James Bradberry's death, Dr. Rosemore indicated that James Bradberry was "felt [to have] ... severe bolus emphysema disease, probable pneumoconiosis as well as anterior myocardial infarction and pulmonary edema." R1-32. Dr. Rosemore described a steadily declining medical status, including worsening renal functions, during James Bradberry's last hospitalization.

[5]The death certificate designated Dr. Rosemore as the certifying physician but was signed by Dr. Avsar. At his deposition, Dr. Rosemore was unable to explain the discrepancy, except to speculate that his staff had erroneously given the certificate to Dr. Avsar for signature.

hearing before an ALJ. The ALJ determined that the evidence was sufficient to establish the existence of pneumoconiosis and to establish that the pneumoconiosis arose from James Bradberry's coal mine employment. The ALJ, however, discredited the death certificate as lacking supporting evidence in the record and discredited Dr. Rosemore's testimony as contradictory.[6] The ALJ further stated that, even if the evidence[7] was credible, it showed only that pneumoconiosis was a minor factor in James Bradberry's death. Thus, the ALJ determined that the evidence failed to show that pneumoconiosis was a "substantially contributing cause leading to [James Bradberry's] death or that [his] death was caused by complications of pneumoconiosis." R1-99. The ALJ issued a decision and order denying benefits to Hattie Bradberry.

The BRB affirmed the ALJ's finding that the medical evidence established the existence of pneumoconiosis.[8] The BRB determined that the ALJ was within his discretion in discrediting the death certificate and Dr. Rosemore's testimony. The BRB, thus, affirmed the ALJ's finding that Hattie Bradberry failed to show that James Bradberry's death was due to pneumoconiosis. The opinion and order of the BRB, however, failed to address whether the ALJ applied the proper legal standard in deciding whether pneumoconiosis was a "substantially contributing cause or factor leading to [James Bradberry's] death." 20 C.F.R. § 718.205(c)(2). Hattie Bradberry seeks review

---

[6]At his deposition, Dr. Rosemore stated that the primary causes of James Bradberry's death were his heart attack and pulmonary edema. He stated that acute tubular necrosis and chronic obstructive lung disease were additional causes. Dr. Rosemore also stated at one point that pneumoconiosis did not cause James Bradberry's death, but, at another point during the deposition, he said that although "pneumoconiosis did not cause his death .... it was a contributing factor along with ... the obstructive pulmonary disease." Dr. Rosemore Dep. at 18.

Dr. Rosemore distinguished James Bradberry's COPD from his pneumoconiosis. He attributed the chronic obstructive lung disease primarily to James Bradberry's "sixty-plus year history of tobacco abuse." *Id.* at 19. We note that Dr. Rosemore's opinion of the duration of James Bradberry's smoking is inconsistent with the record as a whole. James Bradberry died at 67 and had testified in a previous hearing when he was 63 years old that he had quit smoking 12 years earlier.

[7]The evidence addressing the cause of death included the death certificate, Dr. Rosemore's deposition, and the records from James Bradberry's final hospitalization.

[8]The BRB affirmed the determination that James Bradberry had pneumoconiosis despite its finding that the ALJ improperly used the "true doubt rule" in weighing the x-ray evidence. Because the determination was not challenged on appeal, the BRB deemed it waived. R1-2 n. 2.

of the decision and order of the BRB affirming the denial of her claim for survivor's benefits under the Black Lung Benefits Act.

## II. DISCUSSION

Hattie Bradberry challenges the ALJ's determination that the evidence failed to establish that James Bradberry's death was "due to" pneumoconiosis.[9] She alleges that the ALJ applied an erroneous legal standard and abused his discretion by discrediting the death certificate and the testimony of a treating physician. The Director of the Office of Workers' Compensation Programs ("Director") responds to her petition for review and is in overall agreement with her on both issues. Thus, USX stands alone in arguing that the ALJ properly denied Hattie Bradberry's claim for survivor's benefits.

In *Lollar v. Alabama By-Products Corp.,* 893 F.2d 1258 (11th Cir.1990), we clarified the standard of review that we apply in petitions for review under the Black Lung Benefits Act:

> Decisions of the ALJ are reviewable only as to whether they are in accordance with law and supported by substantial evidence in light of the entire record. This deferential standard of review binds both the BRB and this Court. Because this Court applies the same standard of review to ALJ decisions as does the BRB, our review of BRB decisions is *de novo.*

*Id.* at 1261 (citations omitted). Thus, although the case comes to us from the BRB, we begin our analysis by reviewing the decision of the ALJ. *See Freeman United Coal Mining Co. v. Hunter,* 82 F.3d 764, 767 (7th Cir.1996).

A. Pneumoconiosis as a Substantially Contributing Cause or Factor in Death

To receive survivor's benefits under the Black Lung Benefits Act, Hattie Bradberry must establish that James Bradberry had pneumoconiosis, that his pneumoconiosis was caused by coal

---

[9]Hattie Bradberry also argues that the ALJ erred in failing to consider evidence showing that James Bradberry was totally disabled by pneumoconiosis prior to his death. Although the issue of total disability is relevant in a claim by a miner, it is not relevant in a claim for survivor's benefits. *Compare* 20 C.F.R. § 718.204(a) ("Benefits are provided under the Act for or on behalf of miners who are totally disabled due to pneumoconiosis, or who were totally disabled due to pneumoconiosis at the time of death.") *with* 20 C.F.R. § 718.205(a) ("Benefits are provided to eligible survivors of a miner whose death was due to pneumoconiosis."). In this case, James Bradberry's claim for benefits is not at issue. Because Hattie Bradberry claims survivor's benefits, the ALJ properly refused to consider the evidence offered to show that James Bradberry was totally disabled at the time of his death.

mine employment, and that his death was due to the disease.[10] *See McClendon v. Drummond Coal Co.,* 861 F.2d 1512, 1514 (11th Cir.1988). Although the Act itself fails to define "due to pneumoconiosis," the Department of Labor regulations define the phrase as follows:

> For the purpose of adjudicating survivors' claims filed on or after January 1, 1982, death will be considered to be due to pneumoconiosis if any of the following criteria is met:
>
> ....
>
> (2) Where pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or where the death was caused by complications of pneumoconiosis, ...
>
> ...
>
> (4) However, survivors are not eligible for benefits where the miner's death was caused by traumatic injury or the principal cause of death was a medical condition not related to pneumoconiosis, unless the evidence establishes that pneumoconiosis was a substantially contributing cause of death.

20 C.F.R. § 718.205(c). The language "substantially contributing cause or factor leading to the miner's death," *id.,* however, is not further defined in the regulations.

The Director, as the administrator of the black lung benefits program, "has interpreted this language to mean that the standard is met if the survivor proves that pneumoconiosis hastened death to any degree."[11] *Northern Coal Co. v. Director, Office of Workers' Compensation Programs,* 100 F.3d 871, 874 (10th Cir.1996). Five circuit courts of appeals have considered the hastening death standard, and each has adopted it. *See id.* (adopting the hastening death standard for the reasons set forth by the other circuits); *Brown v. Rock Creek Mining Co.,* 996 F.2d 812, 816 (6th Cir.1993) (deferring to the agency interpretation of "substantially contributing cause" as "encompass[ing] the situation where pneumoconiosis actually hastens a miner's death"); *Peabody Coal Co. v. Director, Office of Workers' Compensation Programs,* 972 F.2d 178, 183 (7th Cir.1992) (deferring to the

---

[10]The only issue in this petition for review is the causal relationship between James Bradberry's pneumoconiosis and his death. None of the parties challenge the determination of the ALJ or the BRB that James Bradberry had pneumoconiosis or that the pneumoconiosis was caused by his 38 years of employment in a coal mine. Thus, we do not address those issues here.

[11]Hattie Bradberry and the Director are in agreement as to the proper legal standard that should be applied in this case. Only USX argues that the court should reject the legal standard set forth by the Director.

agency's interpretation and finding the hastening death standard to be a workable standard for determining the "substantially contributing cause" of death); *Shuff v. Cedar Coal Co.,* 967 F.2d 977, 980 (4th Cir.1992) (rejecting the argument that the hastening death standard "reads the word "substantially' out of the regulation"); *Lukosevicz v. Director, Office of Workers' Compensation Programs,* 888 F.2d 1001, 1006 (3d Cir.1989) ("Congress' desire to eliminate benefits to survivors of those who died from causes unrelated to pneumoconiosis does not mandate denial of benefits to survivors of those whose deaths were hastened by the disease."). The Tenth Circuit summarized the various reasons for approving the standard:

> (1) [T]he "[substantially] contributing cause or factor" standard embodied in the regulation, without definition or further explanation, is an unworkable standard; (2) the hastening death standard is a workable standard set forth by the Director and is entitled to deference because it is reasonable and consistent with the regulatory language; and (3) the hastening death standard is consistent with Congressional intent.

*Northern Coal Co.,* 100 F.3d at 874 (citations omitted). USX argues that we should reject the hastening death standard because we need not defer to the Director's position and because "substantially contributing cause or factor" is a workable standard.[12]

USX contends that the Director's support of the hastening death standard is not entitled to deference because the Director's view is merely a litigation position and not a reasoned interpretation. We have held previously that "[i]t is well-established that courts must defer to an agency's consistent interpretation of its own regulation unless it is plainly erroneous or inconsistent with the regulation." *Lollar,* 893 F.2d at 1262 (internal quotation marks omitted). Such deference is due particularly when the agency "has made a written interpretation of the regulation or has maintained a longstanding policy on the subject." *McKee v. Sullivan,* 903 F.2d 1436, 1438 n. 3 (11th Cir.1990). However, we need not defer to a "mere litigating position." *William Bros., Inc. v. Pate,* 833 F.2d 261, 265 (11th Cir.1987) (finding no deference due when the Director adopted a

---

[12]Alternatively, USX argues that, even if the hastening death standard is applied, the evidence fails to show that pneumoconiosis hastened James Bradberry's death. Neither the BRB nor the ALJ addressed explicitly whether the evidence showed that pneumoconiosis hastened his death. Although we defer to the Director's adoption of the hastening death standard, we decline the invitation to consider the evidence for the first time under this standard and choose, instead, to remand to the BRB with directions to vacate the order and allow the ALJ the first opportunity to reconsider the evidence under the hastening death standard.

novel litigating position on the definition of "coal mine dust"); *see also McKee,* 903 F.2d at 1438-39 n. 3 (finding no deference due the Director's view on the evidence required to prove death when the agency cites only two district court cases to establish its position).

With regard to the interpretation of "substantially contributing to the cause" of death, the Director has challenged consistently the BRB's interpretation of the regulatory language and invariably has requested that the courts of appeals adopt the hastening death standard. While we might give greater deference to a written policy, we, nonetheless, find that the Director's endorsement of the hastening death standard has been long held and is neither plainly erroneous nor inconsistent with the regulatory language.[13] Thus, the Director's interpretation is entitled to deference.

Alternatively, USX contends that the regulatory language represents a workable standard that needs no further clarification. According to USX, "substantially contributing" is a workable standard because ALJ's and courts routinely determine what is substantial. The Fourth Circuit, however, opined that "[w]ithout further refinement, the phrase provides an unworkable standard for evaluating the degree of causative involvement pneumoconiosis must have in a miner's death in order for that death to be considered due to pneumoconiosis." *Shuff,* 967 F.2d at 980. We need not determine here whether "substantially contributing" is a workable or unworkable standard because we defer to the Director's interpretation and decide that the hastening death standard is a permissible—even if a nonessential—interpretation of a "substantially contributing cause" of death. *See Chapman v. Sheridan-Wyoming Coal Co.,* 338 U.S. 621, 631, 70 S.Ct. 392, 397, 94 L.Ed. 393

---

[13]USX also suggests that the Director's view of the hastening death standard has been inconsistent over time and is inconsistent with the language of the regulation. We disagree. This case represents at least the sixth circuit where the Director has argued that hastening a death by even a short time represents a substantial contribution to that death. The first case to apply the standard at the request of the Director was *Lukosevicz,* which was decided by the Third Circuit in 1989. The Director consistently has advocated the use of the standard since that time.

USX also argues that, in this case, the Director seeks to define death "due to pneumoconiosis" as anything more than a *de minimis* effect and that such an interpretation is inconsistent with the regulatory language "substantially contributing cause." We need not address this argument, however, because we determine that the hastening death standard is not equivalent to anything more than a *de minimis* effect on death but, rather, is a measure of a "substantially contributing cause."

(1950) (finding an agency's interpretation of its own regulation "permissible, even if not inevitable.")

Thus, we defer to the Director's adoption of the hastening death standard and determine that pneumoconiosis is a "substantially contributing cause or factor leading to the miner's death," 20 C.F.R. § 718.205(c), if it hastens the miner's death. In view of the new standard, we remand to the BRB with directions to vacate the ALJ's denial of survivor's benefits and allow the ALJ to reweigh the evidence in light of the hastening death standard.

B. Weighing the Evidence that Pneumoconiosis Contributed to Death

Although we remand the case for a reweighing of the evidence in view of the hastening death standard, we also must address whether the ALJ appropriately discredited the death certificate and the testimony of the treating physician. The ALJ is responsible for making credibility determinations and for weighing conflicting evidence; however, the ALJ's opinion must show that the determinations are made in a reasoned manner. *Peabody Coal Co.,* 972 F.2d at 182. The ALJ found that the death certificate lacked supporting documentation in the record and that Dr. Rosemore's testimony was internally contradictory and inconsistent with the death certificate. Hattie Bradberry contends that the ALJ failed to support his determinations that James Bradberry's death certificate and Dr. Rosemore's testimony were "deserving of little weight." R1-98-99. We agree.

The death certificate lists pneumoconiosis and COPD, along with myocardial infarction-pulmonary edema and acute tubular necrosis, as causes of James Bradberry's death. The treating notes and reports of Drs. Avsar and Rosemore include numerous references to James Bradberry's compromised pulmonary status, including references relevant to his last hospitalization. The record, for example, shows that he was on a ventilator prior to his death. Additionally, Dr. Rosemore testified that "a person without [James Bradberry's] degree of lung problems may have had a greater chance of survival respiratory-wise than he did." Dr. Rosemore Dep. at 16-17. The ALJ erred in failing to consider this supporting evidence.

The ALJ opined that Dr. Rosemore's testimony contradicted itself and the death certificate. The ALJ noted that Dr. Rosemore stated that myocardial infarction and pulmonary edema were the primary causes of James Bradberry's death. He also noted that Dr. Rosemore stated at one point that

pneumoconiosis did not cause Bradberry's death and at another point that it contributed, along with the COPD, to his death. The ALJ also referred to the fact that Dr. Rosemore attributed James Bradberry's COPD to tobacco abuse, rather than to coal mine employment. In making these findings, however, the ALJ failed to differentiate immediate causes of death from contributing causes[14] and failed to address sufficiently the relationship between James Bradberry's pneumoconiosis and COPD.

The primary cause of death need not be pneumoconiosis for a miner to recover. The regulations provide that "survivors are not eligible for benefits where the miner's death was caused by a traumatic injury or the principal cause of death was a medical condition not related to pneumoconiosis, *unless the evidence establishes that pneumoconiosis was a substantially contributing cause of death.*" 20 C.F.R. § 718.205(c)(4) (emphasis added). Thus, finding the immediate cause of James Bradberry's death to be either myocardial infarction-pulmonary edema or renal failure neither precludes survivor's benefits nor is inconsistent with Dr. Rosemore's statement that pneumoconiosis contributed to James Bradberry's death. Therefore, the only potential inconsistency in Dr. Rosemore's testimony is his statement that pneumoconiosis did not cause James Bradberry's death but that it was a contributing factor. We do not find these points necessarily to be inconsistent, however, since Dr. Rosemore may have been distinguishing the primary cause of death from contributing causes of death.[15] The ALJ failed to note whether Rosemore was making such a distinction.

Although the ALJ noted that Dr. Rosemore attributed James Bradberry's COPD to tobacco abuse, the ALJ failed to address the relationship between James Bradberry's COPD and his coal mine employment. While COPD is distinguishable from clinical pneumoconiosis, COPD that arises from coal-mine employment falls within the legal definition of pneumoconiosis. *Richardson v.*

---

[14]A contributing cause of death, like pneumoconiosis, may hasten the death of a miner even if it was not the primary cause of death.

[15]Nor do we find that Dr. Rosemore's testimony was inconsistent with the death certificate, which listed pneumoconiosis as a cause of death. The death certificate distinguishes primary and contributing causes of death when it directs the physician to "[s]equentially list conditions ... leading to the immediate cause."

*Director, Office of Workers' Compensation Programs,* 94 F.3d 164, 166 n. 2 (4th Cir.1996). Additionally, the ALJ failed to consider that Dr. Rosemore's opinion that James Bradberry's COPD was attributable to more than sixty years of tobacco abuse was not supported by the record as a whole. James Bradberry died at the age of sixty-seven and had testified four years earlier that he had stopped smoking twelve years prior to that time. Thus, we find that the ALJ erred in failing to consider properly the relationship between James Bradberry's coal mine employment and his COPD.

We conclude that the ALJ failed to support adequately his determination that the death certificate and Dr. Rosemore's testimony were deserving of little weight and failed to consider properly the significance of James Bradberry's COPD. We also conclude that the BRB erred in affirming the ALJ's credibility determinations and weighing of the evidence. Upon remand, the BRB should direct the ALJ to reexamine the evidence in view of these findings and in view of the hastening death standard.

### III. CONCLUSION

Hattie Bradberry, the widow of deceased coal miner James Bradberry, petitions this court for review of a decision and order of the BRB that affirmed the ALJ's denial of her claim for survivor's benefits under the Black Lung Benefits Act. We conclude that the ALJ erred by failing to apply the hastening death standard when determining whether pneumoconiosis was a "substantial contributing cause" of death under 20 C.F.R. § 718.205(c). In view of this erroneous legal standard, the BRB erred in affirming the ALJ's denial of benefits. We also determine that, because the ALJ failed to support properly his conclusions that the death certificate and the testimony of the treating physician were deserving of little credit and failed to address the relationship between COPD and coal mine employment, the BRB erred in affirming the ALJ's weighing of the evidence. We VACATE the decision and order of the BRB and REMAND to the BRB with directions to vacate the ALJ's decision and order and to remand to the ALJ for findings of fact and conclusions of law consistent with this opinion.