**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0336n.06

Case No. 17-3994

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jul 10, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ISLAND CREEK COAL COMPANY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE BENEFITS REVIEW |
| | ) | BOARD, UNITED STATES |
| LINDA HUNT, survivor of Cecal Hunt; | ) | DEPARTMENT OF LABOR |
| DIRECTOR, OFFICE OF WORKERS' | ) | |
| COMPENSATION PROGRAMS; U.S. | ) | |
| DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

BEFORE: COLE, Chief Judge; SUTTON and LARSEN, Circuit Judges.

SUTTON, Circuit Judge. Cecal Hunt worked for Island Creek Coal Company for over 23 years, mostly operating equipment in coal mines. He passed away in 2010 from a lung disease. His widow Linda Hunt filed for survivor's benefits under the Black Lung Benefits Act. The Act presumes that those who die of a lung disease after working for more than fifteen years in an underground coal mine are killed by pneumoconiosis, known more commonly as black lung disease. Invoking this rebuttable presumption, the Benefits Review Board granted Linda Hunt benefits. Substantial evidence supports the agency's decision, and accordingly we affirm.

Cecal Hunt worked for Island Creek in Kentucky from 1967 to 1991. Hunt spent most of this time as an underground equipment operator, but he spent the final six years above ground as

a heavy equipment operator at the coal preparation plant. Hunt developed a lung disease and died on March 10, 2010.

His widow Linda Hunt filed an application for survivor's benefits under the Black Lung Benefits Act on October 6, 2010. An administrative law judge found that lung cancer and pneumoconiosis caused Cecal's death and awarded benefits to Linda. The Benefits Review Board of the Department of Labor affirmed the decision. Island Creek appealed. 33 U.S.C. § 921(c).

The Black Lung Benefits Act provides benefits to coal miners (and their survivors) who are totally disabled due to pneumoconiosis, a "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. §§ 902(b), 922. To qualify for survivor's benefits, a claimant must prove by a preponderance of the evidence that (1) the miner had pneumoconiosis, (2) his pneumoconiosis arose at least in part out of his coal mine employment, and (3) his death was due to pneumoconiosis. *Conley v. Nat'l Mines Corp.*, 595 F.3d 297, 302 (6th Cir. 2010); 20 C.F.R. § 718.205; *see also* 20 C.F.R. §§ 718.202–04. The only dispute in this case is whether pneumoconiosis was a cause of Hunt's death.

To help resolve these applications fairly and efficiently, the Act establishes several rebuttable presumptions. Pertinent here, the Act says that, "if a miner was employed for fifteen years or more in one or more underground coal mines" before his death and the "evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment," we must presume that "his death was due to pneumoconiosis." 30 U.S.C. § 921(c)(4). To rebut this presumption, Island Creek must establish "that no part of the miner's death was caused by pneumoconiosis." 20 C.F.R. § 718.305(d)(2)(ii); *see* 30 U.S.C. § 921(c)(4). No one here challenges the validity of this regulation.

2

The administrative law judge found that the statutory presumption applied to Hunt's application and that Island Creek failed to rebut the presumption. Because the Board adopted the ALJ's factual findings, we apply substantial-evidence review to that decision. *Greene v. King James Coal Mining, Inc.*, 575 F.3d 628, 633 (6th Cir. 2009). In doing so, we do not start from square one. We ask only whether the ALJ's findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The record adequately supports the ALJ's decision. Hunt worked in an underground coal mine for at least seventeen years and died of lung disease, triggering the statutory presumption.

Island Creek argues that Hunt's pneumoconiosis was not a cause of his death. But it responds only by pointing to conflicting medical testimony.

This argument has two defects. For one, Island Creek does not get the benefit of a blank slate. It must displace the Act's statutory presumption and prove by a preponderance of the evidence "that no part of the miner's death was caused by pneumoconiosis." 20 C.F.R. § 718.305(d)(2)(ii); *see* 30 U.S.C. § 921(c)(4). It does not suffice to point to medical reports looking in the other direction. In this setting, Congress decided, ties and close calls go to the applicant.

For another, the ALJ gave well-reasoned explanations for discrediting the conflicting reports. Two reports (from Drs. Oesterling and Bush) establish that lung cancer was the primary cause of Hunt's death, but they do not explain how that is inconsistent with pneumoconiosis also contributing to his death. "[N]either pathologist," the ALJ explained, "outlined a specific physiological process which would be caused by small cell carcinoma but exclusive of contribution from the clinical and legal pneumoconiosis identified." J.A. at 258–59.

3

Two other reports (from Drs. Castle and Jarboe) focused only on clinical pneumoconiosis, or "those diseases recognized by the medical community as pneumoconioses, *i.e.*, the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1). But the Act's definition of pneumoconiosis sweeps more broadly, covering any "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). The ALJ justifiably discredited reports that failed to address the relevant medical and legal point.

One last point. At one place in his 34-page opinion, the ALJ says, "Stated differently, by operation of the fifteen year presumption, the Miner's legal pneumoconiosis also presumably contributed to his death. Accordingly, the Employer cannot rebut that presumption because the medical-opinion evidence of record does not address that point, except to say that the Miner did not suffer from legal pneumoconiosis." J.A. at 259. Read by itself, this statement suggests the ALJ was engaged in bootstrapping, concluding that the statutory presumption itself proves that pneumoconiosis caused Hunt's death. That, of course, is wrong. The statutory presumption is rebuttable and the company is free to put forward evidence demonstrating that pneumoconiosis played no causal role in Hunt's death. Island Creek tried to do so here but its evidence ultimately failed to rule out that possibility. That satisfies the governing regulation, which (to repeat) requires Island Creek to demonstrate "that no part of the miner's death was caused by pneumoconiosis." 20 C.F.R. § 718.305(d)(2)(ii).

In the end, weight given to medical opinions, generally speaking, turns on credibility evaluations left to the ALJ's expertise and role as fact-finder, so long as he acts reasonably. *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1072 (6th Cir. 2013). Because the ALJ did just that

here, Island Creek has failed to rebut the statutory presumption of pneumoconiosis, and Linda

Hunt is entitled to benefits.

We affirm.